# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| KERRI MONTOYA, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>DOLGENCORP, LLC d/b/a DOLLAR GENERAL, a Kentucky limited liability company, and DOLLAR GENERAL CORPORATION, a Tennessee Corporation<br><br>Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Kerri Montoya ("Plaintiff"), individually and on behalf of others similarly situated, by and through her undersigned counsel, and for her Class Action Complaint against Defendants Dolgencorp, LLC d/b/a Dollar General and Dollar General Corporation (collectively "Dollar General" or "Defendants"), alleges as follows based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation by counsel and review of public documents as to other matters.

## NATURE OF THE ACTION

1. This lawsuit arises from Defendants' retention of windfall profits generated as a consequence of the unlawful tariffs imposed by the Trump Administration under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.* This windfall is a direct result of Defendants systematically passing on the costs of IEEPA tariffs to their own customers—including Plaintiff—through elevated product prices.

1

2. Beginning on February 1, 2025, President Donald J. Trump issued Executive Orders 14193, 14194, and 14195 imposing IEEPA-based duties on certain imports from Canada, Mexico, and China, respectively. He later issued Executive Order 14245 on March 24, 2025 concerning tariffs on countries importing Venezuelan oil, and Executive Order 14257 on April 2, 2025 declaring a national emergency based on large and persistent United States goods trade deficits and imposing reciprocal tariffs on a broad range of trading partners. *See* Exec. Order No. 14193, 90 Fed. Reg. 9,113 (Feb. 1, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9,117 (Feb. 1, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9,121 (Feb. 1, 2025); Exec. Order No. 14245 (Mar. 24, 2025); Exec. Order No. 14257 (Apr. 2, 2025) (collectively, the "Tariff Executive Orders").

3. The sweeping Tariff Executive Orders imposed an array of frequently changing duties ranging from 10% to 145% (with the upper end reflecting the maximum cumulative IEEPA-based rate applied to certain Chinese-origin goods, comprised of a 125% reciprocal duty under Executive Order 14257 as amended and an additional 20% IEEPA fentanyl duty under Executive Order 14228) based on country-specific tariff policy dictated through published Executive Orders. *See* Exec. Order 14257, 90 Fed. Reg. 15,041 (Apr. 2, 2025); Exec. Order No. 14,259, 90 Fed. Reg. 15,509 (Apr. 8, 2025); Exec. Order No. 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

4. An analysis by the Federal Reserve Bank of New York finds that "U.S. firms and consumers continue to bear the bulk of the economic burden of the high tariffs imposed in 2025."[1] Indeed, the Federal Reserve Bank of New York found that "nearly 90 percent of the tariffs' economic burden fell on U.S. firms and consumers" rather than foreign exporters. Although the stated purpose of the Tariff Executive Orders was to address international trade deficits and other

---

[1] Mary Amiti, Chris Flanagan, Sebastian Heise, and David E. Weinstein, *Who is Paying for the 2025 U.S. Tariffs?*, Federal Reserve Bank of New York (Feb. 12, 2026), https://libertystreeteconomics.newyorkfed.org/2026/02/who-is-paying-for-the-2025-u-s-tariffs/.

2

national-emergency concerns, the economic burden of the tariffs was substantially passed on to American consumers in the form of increased retail prices.

5. When goods are imported into the United States, United States Customs and Border Protection ("CBP") assesses and collects tariffs on those goods based on the Harmonized Tariff Schedule of the United States. Pub. L. No. 100-418, 102 Stat. 1107 (1988). An importer may receive a refund for tariffs through administrative protest under 19 U.S.C. § 1514, refund under 19 U.S.C. § 1520, judicial action in the U.S. Court of International Trade under 28 U.S.C. § 1581(i), or, with respect to IEEPA-related tariffs, through CBP's Consolidated Administration and Processing of Entries ("CAPE") portal launched on April 20, 2026.

6. Defendants paid IEEPA tariffs when they imported goods. To offset the cost of paying IEEPA tariffs, Defendants passed their tariff costs on to Plaintiff and similarly situated consumers by inflating the prices of their products.

7. On February 20, 2026, the United States Supreme Court held that the IEEPA does not authorize the President to impose the tariffs at issue. *Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026).

8. As a result, any IEEPA tariffs charged to Defendants were unlawful for lack of statutory authorization, and Defendants are entitled to, and have sought, a refund for any tariffs they paid pursuant to the Tariff Executive Orders through either litigation in the U.S. Court of International Trade, the CAPE refund process, or other administrative refund procedures.

9. On February 24, 2026, Defendants filed a protective refund action in the U.S. Court of International Trade. *Dolgencorp, LLC v. United States*, No. 1:26-cv-01176 (Ct. Int'l Trade Feb. 24, 2026).

3

10. In their lawsuit, Defendants state that they have "paid all estimated duties, taxes, and fees, including IEEPA tariffs, owed on their entries of imported merchandise" and that they are "entitled to a refund of the IEEPA tariffs that they paid to Customs" including "all interest as provided by law." *Id.*

11. Defendants' own pleadings in that case confirm that Defendants are the importer of record for Dollar General goods imported into the United States, that Defendants paid IEEPA tariffs to CBP on those goods, and that Defendants are actively pursuing refunds of those tariffs.

12. However, Defendants have already passed the unlawful IEEPA tariff costs onto Plaintiff and the Class Members by charging elevated prices to offset such costs. Plaintiff and the Class Members were thereby deprived of money paid to Defendants for IEEPA tariffs that are now refundable.

13. Although Defendants have affirmatively sought refunds of the IEEPA tariffs in the U.S. Court of International Trade, *see supra* ¶ 10, Defendants have made no public commitment to return any portion of those anticipated tariff refunds to the consumers who, through elevated prices, bore the economic burden of those tariffs.

14. If Defendants receive a refund for the IEEPA tariffs, Defendants will have been provided a windfall as a result of already having charged consumers for the collection of unlawful IEEPA tariffs. Defendants' retention of money obtained from charging consumers for IEEPA tariffs offends public policy, is oppressive, and causes substantial injury to consumers by depriving them of the cost of the unlawful IEEPA tariffs.

15. The value of IEEPA tariff refund claims is not merely speculative. Even before the Supreme Court issued its decision in *Learning Resources*, a robust secondary market had emerged in which distressed investors and hedge funds have purchased IEEPA tariff refund claims from

4

importers at a discount in exchange for immediate liquidity.[2] Industry analysts have estimated that the secondary market for IEEPA tariff refund claims could swell to approximately $100 billion in aggregate value.[3]

16. The existence and active trading of these claims confirms that the tariff refunds Defendants are positioned to recover represent concrete, quantifiable economic value—not hypothetical future benefits—and that Defendants' anticipated double recovery at consumers' expense is both real and imminent.

17. Other corporations in Defendants' same position have enacted tariff refund programs to compensate their customers who paid higher prices for products and thus bore the burden of pass-through tariff costs.[4] For example, on UPS's April 28, 2026 first-quarter 2026 earnings call, UPS's Chief Executive Officer Carol Tomé stated that approximately "$5 billion will become available from the tariff refunds" and that "as soon as we get that money, we're going to remit it right back to our customers." FedEx separately stated it would refund corresponding tariff costs to its customers. Defendants could have enacted a similar payback program for Plaintiff and the Class Members, yet chose not to.

18. At minimum, once IEEPA tariff refunds, reliquidation, or other recovery became available, Defendants' retention of tariff-related amounts paid by consumers became unfair, oppressive, and substantially injurious because Defendants retained the benefit of both the inflated prices they passed through to consumers and their corresponding right to tariff refunds.

---

[2] Vito Emanuel, *Wall Street Is Betting on Tariff Refunds After Supreme Court Ruling*, NPR (Mar. 5, 2026), https://www.npr.org/2026/03/05/nx-s1-5736120/tariff-refunds-wall-street-trade.
[3] *Id.*
[4] *See, e.g.*, Jeannette Neumann, *Cards Against Humanity to Give Tariff Refunds to Buyers Who "Overpaid,"* Crain's Chicago Business (Feb. 25, 2026), https://www.chicagobusiness.com/consumer-products/cards-against-humanity-give-tariff-refunds/.

5

19. Accordingly, Plaintiff brings this action individually and on behalf of similarly situated individuals to seek declaratory relief, and redress for common law unjust enrichment and money had and received, and for such other equitable and legal relief as is appropriate, including the imposition of a constructive trust over any IEEPA tariff refund proceeds Defendants receive from the United States.

## THE PARTIES

20. At all relevant times, Plaintiff has been a citizen of the State of Missouri.

21. Defendant Dolgencorp, LLC is a Kentucky limited liability company with its headquarters located at 100 Mission Ridge, Goodlettsville, Tennessee 37072, United States. Dolgencorp, LLC is a wholly owned subsidiary of Dollar General Corporation, which sells consumer goods through retail stores and the dollargeneral.com ecommerce website.

22. Defendant Dollar General Corporation is a Tennessee corporation with its headquarters located at 100 Mission Ridge, Goodlettsville, Tennessee 37072, United States.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000, excluding interest and costs, and at least one member of the proposed Class is a citizen of a state different from that of any Defendant.

24. The Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Defendants' obligation to return to the consumers who paid increased prices due to the IEEPA duties and fees paid by Defendants, as well as any IEEPA duty refunds Defendants recover from the United States.

6

25. The Court has personal jurisdiction over Defendants because Defendants conduct continuous and systematic business in Tennessee, operate physical locations in Tennessee, and ship goods to and from Tennessee regularly.

26. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside here and because a substantial part of the events giving rise to Plaintiff's claims occurred in and emanated from this District.

## BACKGROUND

### DEFENDANTS' BUSINESS MODEL AND SUPPLY CHAIN

27. Defendants advertise, market, sell, and distribute a multitude of products throughout the United States.

28. Defendants source a substantial amount of their products from manufacturers and producers located overseas and in Canada and Mexico. Defendants or their affiliated entities serve as the importer of record for such products and/or their components and paid IEEPA tariffs to U.S. Customs and Border Protection on those imports.

29. The IEEPA tariffs have had a substantial impact on the cost of products sold in Defendants' stores, including private-label products sold under various brand names in Dollar General stores and on the dollargeneral.com website.

30. Dollar General also imports brand-name goods manufactured in countries that were subject to IEEPA tariffs. To offset the cost of these tariffs, Dollar General has charged greater prices than it otherwise would have in the absence of unlawful tariffs.

### DEFENDANTS' PASS-THROUGH OF IEEPA TARIFFS TO CONSUMERS

31. For purposes of this Complaint, the "Class Period" begins February 1, 2025, and continues through the date Defendants refund, credit, disgorge, or are ordered to restore the tariff-related overcharges to consumers, or such other period as discovery shows is appropriate.

32. During the Class Period, Defendants charged prices for their products that were inflated by the cost of IEEPA duties.

33. Dollar General executives have explicitly warned that tariffs will result in increased costs for the company's customers.[5]

34. In the company's Q2 2025 earnings call, Dollar General CEO Todd Vasos said that "[t]ariffs have begun to result in some price increases" of goods sold to Dollar General customers.

35. These price increases were intended to offset the cost to Dollar General of the unlawful IEEPA tariffs that had been imposed on many of the products it sells.

36. However, now that Dollar General is entitled to refunds for such tariffs, it has not been so quick to refund those higher costs to its customers, who ultimately ended up paying some or all of the tariff costs in the form of price increases that otherwise would not have applied to their purchases.

**PLAINTIFF'S PURCHASE**

37. During the Class Period, Plaintiff purchased products from Dollar General in Missouri.

38. On information and belief, Defendants artificially inflated the price of the goods that Plaintiff purchased in order to offset their tariff costs.

---

[5] Hugh Cameron, *Dollar General Warns Of Price Increases*, Newsweek (Sept. 3, 2025), https://www.newsweek.com/dollar-general-price-increases-tariffs-warning-2123958; *See also* Dani James, "*Dollar General Revenue Grows, But Tariffs Begin Impacting Prices*", Retail Dive, (Aug. 28, 2025) https://www.retaildive.com/news/dollar-general-revenue-grows-tariffs-impacting-prices/758865/

39. The product-level import origin, importer-of-record information, tariff classification, entry data, duty-payment records, and any records reflecting whether IEEPA tariff costs were incorporated into retail pricing are within Defendants' possession, custody, or control.

40. Defendants paid IEEPA tariffs on goods and embedded the cost of those tariffs in the prices charged to Plaintiff. But for Defendants' pass-through of IEEPA tariff costs, Plaintiff would have paid lower prices for the products she purchased.

41. Defendants' retention of the unlawful IEEPA tariff costs that were passed on to Plaintiff and Class Members offends public policy as it is unconscionable and unfair for Plaintiff and similarly situated consumers to shoulder Defendants' tax burden under the IEEPA tariffs when those tariffs were unlawful and should not have been collected.

42. As a result of Defendants' practice of passing on tariff costs to their customers, Plaintiff and the Class Members were forced to pay Defendants' tariff burdens.

43. Plaintiff and the members of the Class have unequal bargaining power relative to Defendants and are unable to negotiate the payment of the unlawful IEEPA tariffs from Defendants, and therefore Plaintiff and Class members could not avoid paying the unlawful IEEPA tariffs that were passed on to them.

44. Allowing Defendants to keep the proceeds of the unlawful IEEPA tariff charges deprives Plaintiff and Members of the Class of the money paid for the cost of the unlawful IEEPA tariffs while providing nothing of value to Plaintiff or Class Members.

45. But for Defendants' charging Plaintiff and the Members of the Class the cost of the unlawful IEEPA tariffs, Plaintiff and the Members of the Class would not have needed to shoulder the cost of the unlawful IEEPA tariffs.

**DEFENDANTS' ANTICIPATED TARIFF REFUNDS AND RESULTING DOUBLE RECOVERY**

46. On March 4, 2026, the United States Court of International Trade issued a significant order in *Atmus Filtration, Inc. v. United States*, directing U.S. Customs and Border Protection to refund duties imposed under the IEEPA. *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026).

47. The Court of International Trade's decision reinforced that all importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the Supreme Court's decision in *Atmus Filtration*. *Id.* The Court ordered CBP to liquidate all unliquidated entries "without regard to IEEPA duties" and to reliquidate any liquidated entries for which liquidation is not final without regard to those duties. *Id.* at *2-3.

48. According to Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. *Atmus*, ECF No. 31 at ¶ 12.

49. Accordingly, Defendants are likely entitled to substantial refunds for IEEPA tariffs they paid as the importer of record for goods sourced from countries subject to IEEPA tariffs.

50. To date, Defendants have not established any mechanism to refund to consumers the tariff costs Defendants passed through to them via elevated prices and import charges during the Class Period.

51. This presents an obvious problem: Although Defendants will recover tariff refunds on the tariffed goods they sold, Defendants' customers have already borne the economic brunt of these tariffs by paying higher prices set by Defendants. The risk of Defendants obtaining double recovery is therefore imminent.

10

52. Defendants are poised to be paid twice for the same unlawful tariff burden: once by their customers (including Plaintiff) through elevated prices, and once by the U.S. government through tariff refunds.

## CLASS ALLEGATIONS

53. Plaintiff brings her claims individually and on behalf of the following Class pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure:

> **Class:** All persons in the United States who, during the Class Period, purchased any products that were imported into the United States by or for Defendants, or made with components that were imported into the United States by or for Defendants and for which Defendants paid, deposited, or accrued IEEPA duties.

54. Excluded from the Class are: (1) Defendants; (2) Defendants' officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their family; (4) persons who properly and timely request exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defendants' counsel, and their experts and consultants.

55. **Numerosity**. The proposed Class contains members so numerous that separate joinder of each member of the Class is impracticable. Upon information and belief, there are at least hundreds of thousands, if not millions, of proposed class members. The individuals who purchased items subject to IEEPA tariffs can be ascertained through records in the possession, custody, or control of Defendants.

56. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent, because the factual and legal bases of Defendants' liability to Plaintiff and the other Members of the Class are the same, and because Defendants' conduct has resulted in similar

11

injuries to Plaintiff and to the Class. As alleged herein, Plaintiff and the Class have all suffered damages as a result of Defendants' tariff pass-through pricing.

57. **Commonality and Predominance**. There are questions of law or fact common to the Class, which common questions predominate over any questions affecting only individual members, including but not limited to the following:

    a. Whether Defendants paid IEEPA tariffs on products sold to consumers during the Class Period;

    b. Whether Defendants paid IEEPA tariffs on components used to make or transport products sold to consumers during the Class Period;

    c. Whether Defendants passed IEEPA tariff costs onto consumers through elevated prices;

    d. Whether Defendants unjustly enriched themselves as a result of the unlawful conduct alleged above;

    e. Whether Defendants have been or will be unjustly enriched by receiving government refunds for tariffs they passed through to consumers;

    f. Whether the Class Members are entitled to restitution, actual damages, and attorneys' fees and costs.

58. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff understands the obligations inherent in representing a putative class, and the corresponding duties. Plaintiff has retained counsel competent and experienced in complex and class action litigation. Plaintiff has no interests antagonistic to the Class's interests, and Defendants have no defenses unique to Plaintiff.

59. **Superiority**. This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct.

Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## CLAIMS FOR RELIEF

### COUNT I
### DECLARATORY RELIEF
### 28 U.S.C. § 2201 (on behalf of Plaintiff and the Proposed Class)

60. Plaintiff incorporates the foregoing allegations in Paragraphs 1–59 as if fully stated herein.

61. An actual, justiciable controversy exists between Plaintiff and Defendants regarding the rights and obligations of the parties with respect to IEEPA duties and the resulting inflated prices charged by Defendants to Plaintiff and proposed Class members. This controversy is not hypothetical or abstract; Defendants have already filed suit in the Court of International Trade to recover the tariff charges at issue, the Supreme Court has declared such tariffs unlawful, and Defendants have not refunded to Plaintiff or the Class members any of their tariff-related price increases.

62. Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

    a. Price increases charged to Plaintiff and the proposed Class were collected pursuant to tariffs that were never lawfully authorized, and Defendants have no legal right to retain those amounts;

b. Defendants are obligated to return to Plaintiff and proposed Class members all amounts attributable to increased prices charged by Defendants as a result of the unlawful IEEPA tariffs; and

c. Defendants are obligated to provide a full accounting of all IEEPA tariffs they accrued and passed on to proposed Class members during the relevant period.

63. Declaratory relief is necessary and appropriate because Defendants inflated prices pursuant to tariffs that the Supreme Court has declared were never lawfully authorized, Defendants have not returned those sums to the consumers who paid them, and Defendants have separately filed suit to recover from the government the very funds that consumers provided to Defendants. Without judicial intervention, Plaintiff and the Class have no assurance that Defendants will return the unlawfully collected sums.

64. Class members have no alternative remedy. Because Defendants served as the importer of record, only Defendants have standing to seek a refund from CBP. Individual consumers cannot file suit in the Court of International Trade to recover duties they paid in the form of inflated prices on the goods they purchased. Without the declaratory relief sought in this action, Class members will be left without any mechanism to recover the unlawful tariffs and fees they were forced to pay in the form of inflated prices charged by Defendants.

## COUNT II
## UNJUST ENRICHMENT
**(on behalf of Plaintiff and the Proposed Class)**

65. Plaintiff incorporates the foregoing allegations in Paragraphs 1–64 as if fully stated herein.

66. Plaintiff and the Members of the Class conferred monetary benefits on Defendants by paying elevated prices for products that included unlawful IEEPA tariff-related costs.

14

67. Defendants have been unjustly enriched because they collected and retained retail payments from Plaintiff and the Class that included amounts attributable to IEEPA tariff-related costs, while also retaining the right to seek or receive refunds, credits, reliquidation, or other recovery of those same tariff costs from the government.

68. Defendants knew and appreciated the benefit they received because they set, charged, and retained tariff-related cost increases paid by Plaintiff and the Class. At minimum, after the Supreme Court's invalidation of the IEEPA tariffs and subsequent refund-related proceedings, Defendants knew or should have known that any refund or recovery of IEEPA duties would correspond to tariff costs that consumers had already economically borne through fees and costs imposed on them by Defendants.

69. Defendants' retention of these benefits is unjust and inequitable now that Defendants are positioned to retain both the tariff-related amounts collected from consumers and the corresponding refund rights or proceeds from the government.

70. There is no adequate remedy at law for Plaintiff and the Members of the Class, as Defendants have established no mechanism to refund tariff costs to consumers, and consumers have no direct statutory cause of action to recover IEEPA tariffs from the government.

71. Under principles of equity and good conscience, it would be unjust to permit Defendants to retain both (a) the elevated prices consumers paid due to tariff pass-through pricing, and (b) government refunds of those same tariff costs.

72. Plaintiff and the other members of the Class are entitled to restitution in the amount by which Defendants have been unjustly enriched to the detriment of Plaintiff and the Class, and an order requiring Defendants to disgorge any additional profits or other benefit they have retained as a result of their unjust and unlawful conduct.

15

## COUNT III
## MONEY HAD AND RECEIVED
### (on behalf of Plaintiff and the Proposed Class)

73. Plaintiff incorporates all of the allegations and statements made in Paragraphs 1–72 above as if fully stated herein.

74. This Count is pleaded in the alternative to Count II. While Count II (Unjust Enrichment) addresses the inequity of Defendants' retention of consumer overcharges already collected, this Count more particularly addresses Defendants' anticipated receipt and retention of government refund proceeds that, in equity, represent a return of costs that were economically borne by Plaintiff and Members of the Class, not by Defendants.

75. Defendants received money from Plaintiff and from each Member of the proposed Class in the form of higher prices proximately caused by the pass-through of IEEPA tariff costs.

76. Defendants received this money for the purpose of repaying themselves the IEEPA tariffs they had advanced, as importer of record, to U.S. Customs and Border Protection as duties on imported goods.

77. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization. *Learning Res.*, 607 U.S. at 255.

78. Defendants are now positioned to recover refunds of the IEEPA tariffs from the U.S. government through the liquidation process or litigation in the Court of International Trade. Upon information and belief, Defendants have not paid or distributed any portion of these anticipated refunds to Plaintiff or other consumers who bore the economic burden of the tariffs through elevated prices.

79. The money that Defendants will recover from the government as IEEPA tariff refunds represents, in equity, a return of money that belonged to Plaintiff and to each Member of the

16

proposed Class—the consumers who paid elevated prices due to Defendants' IEEPA tariff-related pass-through.

80. Defendants have not returned this money to Plaintiff or the Class.

81. In equity and good conscience, Defendants should not be permitted to retain the funds they are owed by the government as IEEPA tariff refunds. Those funds belong, in equity, to Plaintiff and the Class, and Defendants are obligated to return them.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that the Court enter an order awarding the following relief and judgment against Defendants as follows:

a. An Order certifying the Class, defining the Class as requested herein, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class counsel;

b. An award of any actual, compensatory, and enhanced damages permitted to Plaintiff and other Class Members for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

c. A declaration that Defendants' retention of tariff-related amounts paid by Plaintiff and the Class, and/or Defendants' retention of any refund, credit, reliquidation, drawback, reimbursement, or other recovery corresponding to IEEPA tariff costs that Defendants passed through to Plaintiff and the Class, is unlawful, unfair, unjust, and inequitable;

d. An Order enjoining Defendants from retaining, without appropriate credit, refund, restitution, or other equitable adjustment to Plaintiff and the Class, any refund, credit, reliquidation, drawback, reimbursement, or other recovery corresponding to IEEPA tariff costs that Defendants passed through to Plaintiff and the Class;

e. An Order requiring Defendants to identify, segregate, preserve, and account for all refunds, credits, reliquidations, drawbacks, reimbursements, or other recoveries that Defendants have received, will receive, or are entitled to receive from the United States government or any other source for IEEPA tariff costs that Defendants passed through to Plaintiff and the Class;

17

f.  An Order requiring Defendants to provide a full accounting of: (i) the IEEPA tariffs Defendants paid or deposited on imported goods, parts, or components which affected the purchase price of goods sold to Plaintiff and the Class; (ii) the amounts of those tariff costs that Defendants passed through to Plaintiff and the Class; and (iii) all refunds, credits, reliquidations, drawbacks, reimbursements, or other recoveries Defendants have received, will receive, or are entitled to receive for those same tariff costs;

g.  An award of reasonable attorneys' fees, costs, and other litigation expenses;

h.  An award of pre- and post-judgment interest as available under law;

i.  Restitution, disgorgement, refund, credit, constructive trust, equitable lien, escrow, or other equitable relief requiring Dollar General to restore tariff-related overcharges to Plaintiff and Class members; and

j.  Such further and other relief as the Court deems just, reasonable, and equitable.

Dated: July 15, 2026

Respectfully submitted,

By: /s/ *Mark Silvey*

Mark E. Silvey, BPR# 013415
BRYSON HARRIS SUCIU DEMAY, PLLC
201 Sevilla Avenue, Suite 200
Coral Gables, FL 33134
C: (865) 919-8839
msilvey@brysonpllc.com

Myles McGuire (*pro hac vice* forthcoming)
William Kingston (*pro hac vice* forthcoming)
Joseph Dunklin (*pro hac vice* forthcoming)
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: 312-893-7002
Fax: 312-275-7895
wkingston@mcgpc.com
jdunklin@mcgpc.com

*Counsel for Plaintiff and the putative Class*

18